Electronically FILED by
Superior Court of California,
County of Los Angeles
9/05/2023 11:14 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By S. Ruiz, Deputy Clerk

Cristal L. Cabrera, Esq., (SBN: 295307)
**CRISTAL LAW OFFICES**
1055 West 7th Street, Suite 1920
Los Angeles, California 90017
Telephone: (213)325-3080
Facsimile: (213)325-3082
Electronic Mail: ccabrera@cristallawoffices.com

Attorneys for Plaintiff,
MICHAEL EPIFANIO ARMIJO

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| MICHAEL EPIFANIO ARMIJO<br><br>Plaintiff,<br><br>v.<br><br>CBS STUDIOS, INC., a Delaware corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO.: 23STCV21345<br><br>COMPLAINT FOR:<br><br>1. WRONGFUL TERMINATION IN VIOLATIO OF PUBLIC POLICY;<br>2. AGE DISCRIMINATION;<br>3. RETALIATION;<br>4. FAILURE TO PREVENT DISCRIMINATION AND RETALIATION<br><br>DEMAND FOR JURY TRIAL |

NOW COMES plaintiff, MICHAEL EPIFANIO ARMIJO, ("Plaintiff" or "Mr. Armijo") who alleges as follows:

**ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

1. Plaintiff, Mr. Armijo, is and was at all times relevant hereto, a resident of the State of California in the County of Los Angeles, and at all times relevant hereto Mr. Armijo was employed by the defendants named herein and made to work as a photographer in the State of California in the County of Los Angeles until his termination on October 9, 2020.

2. Plaintiff is informed and believes and thereon alleges that defendant CBS STUDIOS, INC. ("Defendant" or "CBS"), is and was at all times relevant hereto a corporation organized in the State of Delaware, and conducting business in the State of California and in the County of

1

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1 | Los Angeles where all harm suffered by Plaintiff took place.

3. The true names and capacities, whether individual, corporate or associate, or otherwise, of the defendants named herein as DOES 1 through 100, inclusive, are unknown to Plaintiffs, who therefore sues said defendants by such fictitious names pursuant to California Code of Civil Procedure §474, and Plaintiff will amend his complaint to show their true names and capacities when the same have been ascertained. Plaintiff is informed and believes and based upon such information and belief, alleges that all defendants sued herein as DOES are in some manner responsible for the acts herein alleged and that Plaintiff's damages were proximately caused by their conduct.

4. Plaintiff is informed and believes, and based thereon alleges, that at all times mentioned herein, the defendant CBS and DOES whether specifically named and/or designated herein as a DOE were the employers of Plaintiff, agents, principles, employees, employers, representatives, joint venture or co-conspirators, management companies and/or representatives, or alter ego of each of the other defendants and DOES, either actually or ostensibly, and in doing the things alleged herein acted within the course and scope of such agency, employment, joint venture, conspiracy, reinsurance agreement, co-insurance agreement, management company agreement, alter ego agreement and/or service with the approval, knowledge, authority, acquiescence and/or ratification of each of the remaining defendants and DOES.

5. All of the acts and conduct herein and below described of each and every defendant was duly authorized, ordered, and directed by the respective and collective defendant corporate employers, and the officers and management-level employees of said corporate employers. In addition thereto, said corporate employers participated in the aforementioned acts and conduct of their said employees, agents and representatives, and each of them; and upon completion of the aforesaid acts and conduct of said corporate employees, agents and representatives, the defendant corporation respectively and collectively ratified, accepted the benefits of, condoned, lauded, acquiesced, authorized and otherwise approved of each and all of the said acts and conduct of the aforementioned corporate employees, agents and representatives.

///

2

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

**Factual Allegations**

6. On March 25, 2002 Mr. Armijo was hired by CBS as a "Per Diem" freelance photographer with an hourly rate of $39.21 and a salary of $81,556.80. His personnel documents indicate that he was a "New Employee," in fact the Acknowledgement of Per Diem Status document signed on March 25, 2023 indicated that Mr. Armijo was an "at-will employee" and that his "employment may be terminated at any time for any reason or no reason." The Acknowledgement of Per Diem Status went on to indicate that it was "not a contract of employment."

7. On July 31, 2005 Mr. Armijo's annual salary was increased to $88,936.38.

8. On August 27, 2009 Mr. Armijo's identified hourly pay was increased to $48.36 per hour and identified as having a seniority date of February 11, 2002 and an "Employee Number" of 99175.

9. On November 30, 2015 Mr. Armijo signed a document with the title "2014 Employee, Officer, and Director Certification" which indicated that "CBS requires that…you complete and return this form to your Human Resources Representative if you are an employee or officer…" regarding his romantic relationship with another CBS employee.

10. On October 9, 2020 CBS formally terminated Mr. Armijo and prepared a document titled "Employee Data Change Form" which identified Mr. Armijo as a non-exempt photographer receiving hourly pay but identified as a "Temporary Employee."

11. From 2016 through April 9, 2020 Mr. Armijo was over forty (40) years old and exclusively worked for CBS as a photographer. He was placed on a list and regularly called to photograph news coverage for KCBS 2 and K-CAL 9 which are CBS stations in Los Angeles, California.

12. When the COVID-19 pandemic set in, on or around March 14, 2020 CBS managers and agents sent various email communications to its employees and staff including Mr. Armijo informing of their safety protocols including but not limited to using face masks, disinfecting, and cleaning news trucks that the staff including Mr. Armijo regularly used for their work for Defendant.

3

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

13. In the safety protocols there was a representation that employees who are not comfortable riding in the work trucks with other individuals including but not limited to the news reporters or other CBS employees need only inform a supervisor and alternate transportation arrangements would be made for the employees to take separate vehicles.

14. In March 2020 Mr. Armijo on at least one occasion made a request to the assignment editor Mr. Terry Doyle to ride in a separate vehicle when he was informed that he would have to ride in the same vehicle with other employees. In response Mr. Doyle refused to make the alternate arrangements for Mr. Armijo and even after Mr. Armijo proposed to drive himself to the worksite, his request was denied.

15. After denying Mr. Armijo's request for alternate transportation, Mr. Doyle made Mr. Armijo, despite his complaint regarding safety, ride with the other workers in the Defendant's work truck and then made Mr. Armijo speak to their supervisor Mr. Patrick Givens. During the call with Mr. Givens Mr. Armijo voiced his concern regarding safety and his election for an alternate mode of transportation to which Mr. Givens responded "If you don't want to work, I can arrange that."

16. Fearing for his job and retaliation by Mr. Givens or Mr. Doyle, Plaintiff ultimately rode in the same truck as the other workers on this day despite his concern regarding safety.

17. On or around April 9, 2020 after Mr. Armijo completed the safety check on his vehicle at the start of his shift, he noticed that the truck was not properly turned on, that the equipment rack and batteries were not charged, it was dirty, and another reporter's sports pass was still in the vehicle. Suspecting that the vehicle had been used by another crew earlier that same day and not properly disinfected or cleaned, Mr. Armijo complained to Mr. Marvin Stone that the truck was double shifted and not properly cleaned or prepared for use by Mr. Armijo's shift.

18. Mr. Armijo also complained that he was not supposed to be wiping, cleaning or otherwise disinfecting the trucks since he and the other photographers received email communications from Defendant's agents indicating that the trucks will not be double shifted and that they would be cleaned and disinfected before and after their shifts.

4

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

19. In response Mr. Stone became upset and insisted that the truck was not double shifted and that it was clean. Mr. Armijo asked for another truck and during this Mr. Givens arrived in a frustrated state and exclaimed "What now!?" Mr. Givens insisted that the truck was not double shifted but when he noticed that the batteries were not charged, he told Mr. Stone to get another truck. The men were visibly upset and yelling. Frustrated by the exchange, Mr. Armijo dropped the first truck's keys on the counter next to the security guard Mr. Sal Vargas and then indicated that he would be in the back lot waiting for the other truck.

20. Shortly thereafter Mr. Givens sent a text to Mr. Armijo instructing him to drive the truck so someone could look at it and then he sent a second text confirming that the batteries were dead in the first truck identified as Unit 19 and to use another truck identified as Unit 10. Mr. Givens then instructed Mr. Armijo to clean the new truck. In response Mr. Armijo told Mr. Givens to have someone else wipe the truck. Mr. Armijo then returned to the garage where Mr. Stone and Mr. Givens were and who had been since joined by an engineer named Ms. Denise Schnelle. Mr. Armijo again indicated that he was frustrated with having to clean the trucks when he was made to believe that the trucks would be cleaned before his shift and that he had been given a truck that was double shifted.

21. In response to Mr. Armijo's complaints about the dirty truck and his complaint about having to clean it, Mr. Givens indicated. "If you don't want to work, I can arrange that." He then proceeded to tell Mr. Armijo that he was unprofessional for throwing the keys at him. Confused by the accusation of throwing keys, Mr. Armijo asked him to repeat himself. In response Mr. Givens indicated that he wanted Mr. Armijo off of the lot and that he could leave and go home. Mr. Givens then said to Mr. Armijo, "You're off the list and I'm not using you anymore... Go ahead and tell Maggie [Serrano]. Go and get your union," and then Mr. Givens stormed off.

22. Plaintiff is informed and believes that Ms. Serrano was the HR representative for CBS during these incidents.

///

///

5

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

23. Following this incident, Mr. Armijo was not called or otherwise assigned to cover any more news stories. Mr. Armijo made a complaint with his union representative Elaine Ocasio at IBEW Local 45. In response Ms. Ocasio made representations indicating that the union could not help him.

24. Still not having any shifts or assignments to cover news stories, on June 8, 2020 Mr. Armijo made a written complaint about the incidents with Mr. Givens to Kathleen Kelly who Plaintiff was informed and believed to be the CBS Director of Human Resources.

25. Following his written complaint to HR, Mr. Armijo did not receive any substantive response other than a question about notifying Ms. Serrano. Following his June 8, 2020 written complaint to Ms. Kelly, Plaintiff was still not called or otherwise assigned to cover any more news stories.

26. Mr. Armijo is informed and believes that Mr. Givens retaliated against him for complaining about not following the safety precautions regarding COVID-19 regarding the dirty truck and for complaining about having to clean and disinfect the trucks which is outside of his job duties as a photographer.

27. Furthermore Mr. Armijo alleges that Mr. Givens purposely refused to consider Mr. Armijo for an open Crew Chief position despite recommendations. The Crew Chief position would have included added benefits and an increase in pay. Mr. Armijo is informed and believes that an individual more than ten (10) years younger than him was hired and that his age was part of Mr. Given's decision to refuse to consider Mr. Armijo.

28. During this time Defendants hired younger workers to fill photographer positions over more experienced and long term employees such as Mr. Armijo who Mr. Givens took off of the news day photographer list.

29. On March 27, 2020, the California Governor issued an order giving the Judicial Council of California authority to adopt emergency rules in response to the COVID-19 pandemic. Under that order, the Judicial Council adopted Emergency Rule 9. The initial version of Emergency Rule 9, issued April 6, 2020 tolled the statute of limitations for civil actions from April 6, 2020, until 90 days after the Governor lifts the state of emergency. The rule was later

amended on May 29, 2020, to provide specific dates to end the tolling periods, thereby creating greater certainty for litigants. Amended Emergency Rule 9 creates two tolling periods which depends on the length of the pertinent statute of limitation. Under Rule 9(a), statutes of limitations that exceed 180 days, as is the case in the present action, were tolled from April 6, 2020 until October 1, 2020.

30. On December 2, 2020 Plaintiff made a formal written request for his personnel and employment records.

31. On December 29, 2020 records were received without any document or indication of any arbitration provision applicable to Mr. Armijo.

32. On September 23, 2021 Mr. Armijo filed his complaint with the Department of Fair Housing and Employment ("DFEH") for Fair Employment and Housing Act ("FEHA") violations. He was thereafter issued a Right to Sue on September 2, 2022.

**FIRST CAUSE OF ACTION**

**WRONGFUL TERMINATION IN VIOLATIO OF PUBLIC POLICY**

**AGAINST DEFENDANT AND DOES**

33. Plaintiff realleges and incorporates by reference all of the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

34. Plaintiff was employed by Defendants.

35. Defendants discharged Plaintiff.

36. Plaintiff's complaints regarding safety and his age were substantial motivating reasons for Plaintiff's discharge.

37. Plaintiff was harmed.

38. The discharge was a substantial factor in causing Plaintiff's harm.

39. The foregoing conduct of Defendants individually, or by and through their managing agents, was intended by Defendants to cause injury to Plaintiff or was despicable conduct carried on by Defendants with a willful and conscious disregard of the rights of Plaintiff or subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's right to be free from interference by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation,

or coercion such as to constitute malice, oppression, or fraud under CIVIL CODE § 3294, thereby entitling Plaintiff to punitive damages in an amount appropriate to punish or make an example of Defendants.

## SECOND CAUSE OF ACTION

## AGE DISCRIMINATION

## AGAINST DEFENDANTS CF, LFESC, LFC AND DOES

40. Plaintiff realleges and incorporates by reference all of the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

41. Defendants were an employer or other entity covered by the California GOVERNMENT CODE § 12940(a) and the FEHA.

42. Plaintiff was an employee of Defendants over the age of forty (40).

43. Defendants refused to promote and eventually discharged Plaintiff.

44. Plaintiff's age was a substantial motivating reason for Defendant's refusal to promote Plaintiff and their decision to discharge Plaintiff's employment.

45. Plaintiff was harmed.

46. Defendants' conduct was a substantial factor in causing Plaintiff's harm.

47. The foregoing conduct of Defendants individually, or by and through their managing agents, was intended by Defendants to cause injury to Plaintiff or was despicable conduct carried on by Defendants with a willful and conscious disregard of the rights of Plaintiff or subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's right to be free from interference by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion such as to constitute malice, oppression, or fraud under CIVIL CODE § 3294, thereby entitling Plaintiff to punitive damages in an amount appropriate to punish or make an example of Defendants.

48. Plaintiff is entitled to recover past and future economic loss including lost earnings, and past and future non-economic loss including pain and suffering.

49. Pursuant to GOVERNMENT CODE § 12965(b) Plaintiff requests a reasonable award of attorney's fees and costs including expert fees pursuant to the FEHA.

# THIRD CAUSE OF ACTION

## RETALIATION

## AGAINST DEFENDANT AND DOES

50. Plaintiff realleges and incorporates by reference all of the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

51. LAB. CODE § 1102.5(b) provides, in pertinent part, "[a]n employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, . . . if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties." This statute reflects the broad public policy interest in encouraging workplace whistleblowers to report unlawful acts without fearing retaliation.

52. Defendants were employers for purposes of California law.

53. Plaintiff was an employee of Defendants, performing work on behalf of Defendants.

54. Defendants subjected Plaintiff to the following adverse employment actions: (1) asked impermissible non-job-related questions; (2) demoted; (3) denied any employment benefit of privilege; (4) denied hire or promotion; or (5) reprimanded.

55. Defendants subjected Plaintiff to the foregoing adverse employment actions in retaliation for engaging in protected activities, including, but not limited to: (1) making complaints about and reporting health and safety violations; (2) reprimanding Plaintiff for making complaints about and otherwise reporting health and safety; and (3) demoting and/or terminating Plaintiff for making complaints about and reporting health and safety violations.

///
///
///

56. In doing the things herein alleged, the acts and conduct of Defendants, and each of them, constituted "malice," "oppression" and/or "fraud" (as those terms are defined by Civ. Code §3294(c)), in that these acts were intended by Defendants to cause injury to Plaintiff and/or constituted despicable conduct carried on by the Defendants with willful and conscious disregard of the rights of Plaintiff, with the intention of the Defendants to deprive Plaintiff of property and legal rights, and were authorized or approved by Defendants justifying an award of exemplary and punitive damages in an amount according to proof, in order to deter Defendants from similar conduct in the future, should be made.

## FOURTH CAUSE OF ACTION
## FAILURE TO PREVENT DISCRIMINATION AND RETALIATION
## AGAINST DEFENDANT AND DOES

57. Plaintiff realleges and incorporates by reference all of the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

58. Plaintiff was an employee of Defendants.

59. Plaintiff was subjected to discrimination and retaliation in the course of employment.

60. Defendants failed to take all reasonable steps to prevent the discrimination and retaliation.

61. Plaintiff was harmed.

62. Defendants' failure to take all reasonable steps to prevent discrimination and retaliation was a substantial factor in causing Plaintiff's harm.

63. The foregoing conduct of Defendants individually, or by and through their managing agents, was intended by Defendants to cause injury to Plaintiff or was despicable conduct carried on by Defendants with a willful and conscious disregard of the rights of Plaintiff or subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's right to be free from interference by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion such as to constitute malice, oppression, or fraud under CIVIL CODE § 3294, thereby entitling Plaintiff to punitive damages in an amount appropriate to punish or make an example of Defendants.

64. Plaintiff is entitled to recover past and future economic loss including lost earnings, and past and future non-economic loss including pain and suffering.

65. Pursuant to GOVERNMENT CODE § 12965(b) Plaintiff requests a reasonable award of attorney's fees and costs including expert fees pu7rsuant to the FEHA.

**PRAYER**

WHEREFORE, Plaintiff prays for relief and a judgment against Defendants as follows:

a. Compensatory damages according to proof at the time of trial;

b. Punitive damages or exemplary damages pursuant to CIV. C. § 3294;

c. Pre-judgment interest pursuant to CIV. CODE §§ 3287 and/or 3288;

d. Reasonable attorneys' fees and costs pursuant to all applicable statutes or legal principles, including, but not limited to the California FAIR EMPLOYMENT AND HOUSING ACT, GOV. C. § 12965(b), LAB. CODE § 1102.5 & CODE CIV. PROC. § 1021.5; and

e. For such other and further relief as the Court deems just and proper.

DATED: September 5, 2023         **CRISTAL LAW OFFICES**

_____
Attorney for Plaintiff,
MICHAEL EPIFANIO ARMIJO

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury on all issues so triable in the Complaint.

DATED: September 5, 2023      **CRISTAL LAW OFFICES**

*[signature]*

Attorney for Plaintiff,
MICHAEL EPIFANIO ARMIJO

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL